**SIGNED THIS: May 15, 2013**

_____
**Mary P. Gorman
United States Chief Bankruptcy Judge**
_____

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| In Re: | ) | |
| | ) | Case No. 09-71845 |
| BRADD RANDALL STEWART and | ) | |
| HEATHER ANN STEWART, | ) | Chapter 7 |
| | ) | |
| Debtors. | ) | |

# O P I N I O N

This case is before the Court on the Debtors' Motion for Sanctions for Discharge Stay Violation. The motion alleges that the City of Decatur violated the discharge injunction previously entered in this case by taking action against the Debtors to collect the costs the City incurred when it demolished a structure that the Debtors owned. The disputed issue is whether the demolition costs that the City incurred post-petition constitute a pre-petition claim which has been discharged. For the reasons to follow, the Court finds that the City had a pre-petition claim against the Debtors that has been discharged and, accordingly, the City's continuing collection efforts violate the discharge

-1-

injunction and must cease.

## FACTUAL BACKGROUND

The facts of this case are undisputed. The City of Decatur ("City") enforces the Illinois Municipal Code and its own related building codes and ordinances through a system of inspections and notices.[1] When the City is made aware of substandard property, it performs an inspection. If the inspectors find that the property is dangerous, unsafe, or structurally unsound, the City posts the property as unfit for human habitation. The City then sends a letter to the owner notifying him of the posting and the inspection's findings. The letter sets forth the specific code violations and informs the owner of his right to appeal the notice within ten days. If the problems are not remedied, a statutorily-mandated notice, known as a "15 Day Notice," is sent to the owner notifying him that if the property is not repaired or made safe within fifteen days, then the City will abate the violations and seek reimbursement of the costs from the owner. If the owner still fails to remedy the code violations, the City obtains an estimate to repair the property. If the estimate exceeds the assessed value of the property, the City then files a complaint in circuit court requesting authority to demolish the structure. Once judgment is entered, the structure is demolished, and the demolition expenses, costs of suit, and reasonable attorneys fees are assessed against the owner in a final judgment.

In a notice dated and mailed March 27, 2009, the City notified Bradd Randall Stewart and Heather Ann Stewart ("Debtors") that a building they owned at 1185 East Division Street, Decatur,

---

[1] The Debtors and the City filed a stipulation of facts from which the Court's factual findings are drawn. In the stipulation, the parties agree that a previous opinion of this Court accurately describes the City's current procedure for handling real properties that are in violation of the City's building code. *See Gray v. City of Decatur* (*In re Gray*), 394 B.R. 900, 902-03 (Bankr. C.D. Ill. 2008). Jay Barr, attorney for the Debtors, and John T. Robinson, counsel for the City, were also the attorneys of record in *Gray*.

Illinois, had been found to be unfit for human habitation. Attached to the notice was a Summary of Housing Code Deficiencies setting forth numerous building code violations. The notice ordered that the structure be vacated by April 27, 2009, and stated that it "shall remain vacant until the code requirements are met and the order to vacate is withdrawn." The notice informed the Debtors that even if the structure already was vacant, they remained under an obligation to perform the necessary repairs by April 27th. The Debtors made few, if any, of the required repairs.

The City sent the Debtors a second notice on October 21, 2009. The notice informed the Debtors that the building on the property at 1185 East Division Street "is dangerous and unsafe, or uncompleted and abandoned." This second notice was the statutorily-mandated 15 Day Notice and it stated that unless the building was demolished or made safe within fifteen days, the City would abate the violation at the Debtors' expense.

Following receipt of the 15 Day Notice, the Debtors failed to repair or demolish the unsafe structure. The City demolished the building in February 2011. The City has undertaken collection efforts against the Debtors to collect its judgment for demolition expenses, including revocation of the Debtors' City-issued boat dock license.

Debtors filed this case under Chapter 7 on June 19, 2009. Debtors listed the City on their Schedule F for several small utility bills owed to the City but did not specifically list a debt related to the building code violations at the East Division Street property. Debtors scheduled their ownership of the East Division Street property and also scheduled Wells Fargo as having a secured claim related to the property. On their Statement of Intent, Debtors proposed to surrender the property to Wells Fargo. The Debtors received their discharge by order dated October 27, 2009. This case was closed as a no-asset case on November 12, 2009.

The Debtors never claimed that the City's activities to enforce its building codes during the

pendency of their case violated the automatic stay. After the City began enforcing its judgment for demolition costs, however, the Debtors moved to reopen this case and that request was granted on January 29, 2013. Debtors claim that because the City began its enforcement activities pre-petition, it had a cognizable claim against them which was discharged. The City asserts that because it had neither served the 15 Day Notice nor begun demolition activities until after this case was filed, it had no pre-petition claim which could be discharged. The Debtors seek no money damages from the City for the alleged violation of the discharge injunction but do request that the City be ordered to cease its collection efforts for the demolition costs.

With their stipulation of facts, both the Debtors and the City elected not to provide briefs or other memoranda of law. This matter is ready for decision.

## JURISDICTION

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1334. Proceedings regarding enforcement of the discharge injunction are core proceedings. *See* 28 U.S.C. §§157(b)(2)(A), (I), (O).

## LEGAL ANALYSIS

### A. Applicable Law

A claim for reimbursement of demolition costs usually is dischargeable because such a claim is not included as one of the specified exceptions to discharge set forth in the Bankruptcy Code. 11 U.S.C. §523(a); *see Gray*, 394 B.R at 903.[2] But a Chapter 7 discharge only applies to "debts that

---

[2] The City does not raise any issues regarding notice despite the fact that the specific debt at issue here was not identified on the Debtors' schedules. Notice of the case filing and relevant dates was sent to the City as its principal place of business. Further, even if notice was lacking here, raising

arose before the date of the order for relief . . . ." 11 U.S.C. §727(b). The date of the "order for relief" in a voluntary case like this one is the date the case is filed. 11 U.S.C. §301(b). A "debt" as defined in the Bankruptcy Code is "liability on a claim." 11 U.S.C. §101(12). A "claim" includes a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured . . . ." 11 U.S.C. §101(5)(A). And a "right to payment" simply refers to an enforceable obligation. *Cohen v. de la Cruz*, 523 U.S. 213, 218 (1998); *Antonino v. Kenny* (*In re Antonino*), 241 B.R. 883, 888 (Bankr. N.D. Ill. 1999). When a creditor has a claim against the debtor, the debtor has a corresponding debt to the creditor. *Gray*, 394 B.R. at 903 (citing *Barber v. K-B Bldg. Co.* (*In re Barber*), 339 B.R. 587, 594 (Bankr. W.D. Pa. 2006)).

By design, the definition of "claim" is expansive, which allows all of a debtor's legal obligations to be handled in a bankruptcy case. *In re Kasco*, 378 B.R. 207, 210 (Bankr. N.D. Ill. 2007). To hold a claim, a claimant must have a right to payment that arose before the debtor filed the petition. *In re Karp*, 373 B.R. 837, 841 (Bankr. N.D. Ill. 2007). A claim may exist even if suit could not yet be brought under state law. *See Gray*, 394 B.R. at 905.

But the definition of a claim is not limitless. *Antonino*, 241 B.R. at 888. First, the debtor must have had some kind of pre-petition relationship with the claimant, such as "contact, exposure, impact, or privity." *See Epstein v. Official Comm. of Unsecured Creditors of the Estate of Piper Aircraft Corp.* (*In re Piper Aircraft Corp.*), 58 F.3d 1573, 1577 (11th Cir. 1995);[3] *Covey v. Hackett* (*In re*

---

that issue now would, most likely, serve only to extend the time for the City to file a complaint to determine dischargeability. *See* 11 U.S.C. §§523(a)(3), (c). As the City also cites no facts which would support such a dischargeability complaint, the notice issue will not be considered further.

[3] The *Piper* decision ultimately held that the point in time by which the relationship must be established should be pushed back from the time the case is filed until the time the Chapter 11 plan is confirmed. *See Piper Aircraft Corp.*, 58 F.3d at 1577. The eponymous "*Piper* test" thus was born.

*Roadrunner Delivery, Inc.*), 2007 WL 4553068, at *2 (Bankr. C.D. Ill. Dec. 19, 2007); *White v. Chance Indus., Inc.* (*In re Chance Indus., Inc.*), 367 B.R. 689, 705-06 (Bankr. D. Kan. 2006). Second, the basis for the claim must be the debtor's pre-petition conduct. *See Piper Aircraft Corp.*, 58 F.3d at 1577. This is often called the "relationship" theory.[4]

### B. The City had a pre-petition claim against the Debtors

The parties agree that the structure at 1185 East Division Street was unfit for human habitation before the Debtors filed this case and that the numerous building code violations which ultimately formed the basis for the post-petition demolition were in existence pre-petition. The question is whether the pre-petition notice, dated March 27, 2009, that stated that the property was unfit for human habitation is sufficient to establish that the City had a pre-petition claim against the Debtors.

As *Gray* explains, the case law regarding when a municipality's claim for demolition expenses comes into existence requires some level of involvement by the municipality before a court will find that the municipality holds a claim for those expenses. *Gray*, 394 B.R. at 905. The mere existence of building code violations, no matter how numerous, does not suffice to show that

---

This approach does not work in a Chapter 7 case such as this one, however, so the dividing line remains the date of filing.

[4] Some courts use the "conduct" theory to analyze whether a claim exists, which says that a claim arises on the date of the conduct which gives rise to the claim. *See Grady v. A.H. Robins Co., Inc.*, 839 F.2d 198, 203 (4th Cir. 1988). The Seventh Circuit has yet to adopt a theory. *See Roadrunner Delivery*, 2007 WL 4553068, at *2. But in *Gray*, this Court applied the relationship theory to similar facts and the parties' continued joint reliance on *Gray* indicates that they agree that this Court should apply the relationship theory in this case. Moreover, the relationship theory strikes a proper balance between the goal of handling all of a debtor's legal obligations in a single forum and not infringing on unknown claimants' due process rights to participate in the bankruptcy. *See Wright v. Corning*, 679 F.3d 101, 107 (3d Cir. 2012).

demolition is inevitable and that, if a bankruptcy is filed, the municipality holds a dischargeable debt. *Id.* In *Gray*, with respect to six of the seven properties at issue, there was no evidence of any inspections, notices, or other pre-petition involvement by the City. Hence, this Court found that the City did not have a pre-petition claim for demolition expenses for those six properties. *Id.* With respect to the seventh property at issue in *Gray*, however, the City had inspected the property pre-petition and sent the debtor both the notice that the property was unfit for human habitation and the 15 Day Notice before the debtor filed bankruptcy. *Id.* Accordingly, this Court found that the City held a pre-petition claim for demolition expenses as to the seventh property which was discharged. *Id.*

In this case, the City inspected the building at 1185 East Division Street and sent the Debtors the notice of unfitness for human habitation before the Debtors filed bankruptcy, but did not send the 15 Day Notice until after the case was filed. Still, the pre-petition inspection and notice of unfitness for human habitation demonstrate enough of a pre-petition relationship for this Court to find that the City had a claim against the Debtors which existed on the date of filing and, accordingly, was discharged.

Other courts faced with similar facts have come to the same conclusion. In *City of Clarksburg v. Sprouse* (*In re Sprouse*), 2008 WL 1767727 (Bankr. N.D. W. Va. Apr. 15, 2008), the municipality placed a condemnation placard on the debtors' property stating that it was "dilapidated." *Sprouse*, 2008 WL 1767727, at *1. The notice of violation issued the same day informed the debtors of the building code violations and gave them twenty days to submit a plan to remedy the problem or otherwise face a citation from the city. *Id.* More than four months later, the debtors filed a no-asset Chapter 7 case. *Id.* About thirteen months after the condemnation placard was placed on the property, the municipality realized that the property had been on a demolition list for a year and that it had secured the property. *Id.* at *2. The city then placed a second placard on the property, stating that the

property was unfit for human habitation, was unsafe, and was to be razed. The property was not demolished until about three years after the debtors filed bankruptcy, when the city was able to secure the funds to pay for it. *Id.* The court relied on the conduct theory in finding that the city had a claim, saying that the debtors' actions that caused the property to be demolished occurred before they filed bankruptcy. *See id.* at *3. But the city also clearly had established a pre-petition relationship with the debtors regarding the property by posting the condemnation placard, issuing the notice of violations, and giving the debtors twenty days to fix the problems. *See id.* at *1.

In this case, the City conducted a pre-petition inspection of the structure at 1185 East Division Street and sent the Debtors a notice stating that it was unfit for human habitation and setting forth the numerous building code deficiencies. While the 15 Day Notice was not sent to the Debtors until after they filed this case, the City had already taken the initial but necessary steps in advance of any demolition and was on notice of the problems at 1185 East Division Street. This is the type of contact that the relationship theory contemplates and which also was present in *Sprouse*. *See Piper Aircraft Corp.*, 58 F.3d at 1577; *Sprouse*, 2008 WL 1767727, at *1.

A pre-petition relationship also was an important factor in *In re Caslin*, 97 B.R. 366 (Bankr. S.D. Ohio 1989). In *Caslin*, the City of Dayton sent the debtor a "Notice of Nuisance" prior to his bankruptcy filing, which the court construed to be a claim for the demolition costs the City of Dayton incurred post-petition. *See Caslin*, 97 B.R. at 367, 369. In *In re Flood*, 234 B.R. 286 (Bankr. W.D.N.Y. 1999), the court found that a municipality did not have a pre-petition claim for demolition expenses. *Flood*, 234 B.R. at 292. The court found that the city never began any of the prerequisites for demolition, including conducting a structural inspection, until after the debtor had filed bankruptcy. *See id.* at 290-92.

There is no dispute that the building code violations here all occurred before the Debtors filed

this case and that the City had begun its code enforcement process pre-petition. Thus, it is clear that the City had a pre-petition claim against the Debtors. The claim was unliquidated — the amount owed was undetermined and undeterminable as of the petition date — but it was a claim nonetheless. *Sprouse*, 2008 WL 1767727, at *2; *see* 11 U.S.C. §101(5)(A).

### C. The City violated the discharge injunction

The City's pre-petition claim for the demolition expenses was discharged on October 27, 2009, along with the Debtors' other dischargeable debts. One effect of a discharge is to enjoin "the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor . . . ." 11 U.S.C. §524(a)(2). The discharge injunction is self-executing and is not affected by any conduct of a debtor, including waiver. *See Close v. Edison* (*In re Close*), 2003 WL 22697825, at *5 (Bankr. E.D. Pa. Oct. 29, 2003); *In re Dalton*, 183 B.R. 127, 129 n.1 (Bankr. S.D. Tex. 1995). The City does not deny that it has conducted citation hearings on the demolition expenses, threatened to revoke the Debtors' boat dock license, and prevented the Debtors from making their customary boat dock license payments. The City also does not deny that the basis for doing so is to collect the demolition costs. The Court finds that the City's continued attempts to recover the demolition expenses constitute a violation of the discharge injunction. The Debtors have not requested monetary damages, fees, or costs, so none will be awarded. But, the City must cease all activities to collect the demolition expenses from the Debtors personally.[5]

---

[5] The City may have obtained a lien on the East Division Street property as part of the demolition and code enforcement proceedings. Nothing in this Opinion should be construed as limiting the City's right to enforce its rights *in rem* as to the East Division Street property.

## CONCLUSION

Because the City had inspected the property at 1185 East Division Street and issued its initial notice of code violations before this case was filed, a sufficient relationship existed between the City and the Debtors for the City's claim against the Debtors to have come into existence pre-petition. Accordingly, the claim, albeit unliquidated at the time, was discharged. The City is, therefore, subject to the discharge injunction and may not enforce its claim personally against the Debtors.

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.

See written Order.

###